STATE v. BEN LEWIS.

(Filed 25 May, 1938.)

1. **Homicide § 18—Evidence held to establish proper predicate for admission of testimony of dying declarations.**

   Evidence that the victim of an assault was taken to a hospital immediately after being shot, that after about 25 days he was discharged therefrom because of improved condition, that he was returned to the hospital a week after his discharge, suffering from a hemorrhage, that he then showed signs of shock and showed anxiety about his condition, and was given oxygen by means of a catheter, that he stated three days after being readmitted that he was going to die and that he had no hope of living, respectively, before making the statements sought to be introduced in evidence, and that he died three days thereafter, *is held* to establish proper foundation for the admission of testimony of his statements as dying declarations.

2. **Criminal Law § 81c—**

   Where defendant admits the fatal shooting, and the jury returns a verdict of guilty of manslaughter, the admission of testimony of declarations by deceased to the effect that defendant shot him without excuse while he was unarmed, would seem harmless.

APPEAL by defendant from *Bivens, J.,* at March Term, 1938, of GUILFORD.

Criminal prosecution tried upon indictment charging the defendant with the murder of one Herbert Tinsley.

On 5 December, 1937, the defendant shot Herbert Tinsley with a pistol, the bullet entering the upper region of the chest. Tinsley was carried to the hospital immediately and remained there until 1 January, 1938, when he was discharged on account of improvement in his condition. He returned to the hospital on 8 January, due to hemorrhage in the pleural cavity, "was pale, showed signs of shock such as produced sweating, shortness of breath, weakness and a certain amount of anxiety

about himself, about his condition." Oxygen through the nose by means of a catheter, usually used as a last resort, and other medication, were instituted, but to no avail. He died 14 January.

On 11 January, after stating to police officer Holt that he was "going to die," Tinsley said: "Bennie shot me for nothing. He said I had a gun but I did not have a gun." This was reported to Captain Brannock, who returned with Holt to see the deceased later in the same day. After again stating to the officers that "he did not think there was any hope for him to live" and that he "trusted in the Lord," he repeated his statement that Bennie Lewis shot him and that he, Tinsley, had no weapon of any kind.

These statements were admitted as dying declarations, over objection of the defendant, and they constitute the only exceptive assignments of error.

Verdict: Guilty of manslaughter.

Judgment: Imprisonment in the State's Prison for a period of not less than seven nor more than ten years.

Defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Willis for the State.*

*Stern & Stern and Spencer B. Adams for defendant.*

STACY, C. J. The single question for decision is whether proper foundation or predicate was laid for the introduction in evidence of the dying declarations of the deceased. The defendant relies upon *S. v. Stewart,* 210 N. C., 362, 186 S. E., 488, for a negative answer. We agree with the Attorney-General that the case is controlled by the decisions in *S. v. Triplett,* 211 N. C., 105, 189 S. E., 123; *S. v. Carden,* 209 N. C., 404, 183 S. E., 898; *S. v. Beal,* 199 N. C., 278, 154 S. E., 604, and cases there cited. The foundation is sufficient. *S. v. Wallace,* 203 N. C., 284, 166 S. E., 716; *S. v. Mills,* 91 N. C., 581; Wigmore on Evidence, sec. 1440.

Moreover, the dying declarations of the deceased appear to have had but little, if any, weight with the jury. The shooting was admitted and the jury returned the following verdict: "We find the defendant not guilty of murder in the first degree; not guilty of murder in the second degree; but we find him guilty of manslaughter."

The exceptions are not such as to vitiate the trial.

No error.